SALLIE ADAMS

*v.*

WILLIE ARTHUR FERRELL, *et al.*

(No. 10232)

Submitted January 16, 1951. Decided March 1, 1951.

464

*M. O. Litz,* for appellants.

*Jackson D. Altizer,* for appellee.

HAYMOND, JUDGE:

This suit in equity was instituted in the Court of Common Pleas of Kanawha County on May 4, 1945, by the plaintiff, Sallie Adams, to obtain a release of a deed of trust upon certain land owned by the plaintiff, executed by R. H. Thomas and Helen Thomas, husband and wife, to W. L. Poling, trustee, dated February 14, 1924, and to have that instrument cancelled and declared to be void as a cloud upon her title. Willie Arthur Ferrell, Mary Logan Ferrell and William Ferrell, often referred to in the record as W. A. Ferrell, were named as defendants in the bill of complaint. According to the testimony of Mary Logan Ferrell, Willie Arthur Ferrell is her son and William Ferrell is her husband. The question involved is whether 94 interest bearing notes in the principal sum of $25.00 each, executed by R. H. Thomas, payable to the defendant, W. A. Ferrell, and secured by the above mentioned deed of trust, have been paid. The case was heard upon the bill of complaint and its exhibits, upon the joint and separate answer of the defendants, and upon depositions of witnesses respectively taken and filed in behalf of the plaintiff and the defendants. By final decree entered December 18, 1948, the Court of Common Pleas granted the plaintiff the relief prayed for in her bill of complaint, ordered the release of the deed of trust, declared it to be null and void as against the plaintiff, and directed the defendant, W. A. Ferrell, who is identified by the record as William Ferrell, the husband of Mary Logan Ferrell, to execute and deliver a release of the deed of trust within a specified period, and appointed a special commissioner to execute and deliver such release in the event the defendant, W. A. Ferrell, failed or refused to comply with that provision of the decree.

By decree entered April 18, 1949, the Circuit Court of Kanawha County refused an appeal from the final decree of the Court of Common Pleas and from that decree of the Circuit Court this appeal was granted by this Court.

By deed dated April 19, 1920, the Riverview Company, a corporation, granted and conveyed to the defendant W. A. Ferrell three lots or parcels of land, except minerals and mineral rights, situated in Riverview Addition, Charleston District, Kanawha County. The dimensions of the lot here involved are fifty feet by seventy feet, and it appears to be a part of the lot designated in the above mentioned deed as Lot "C". On November 5, 1923, the defendants, W. A. Ferrell and Mary Logan Ferrell, his wife, borrowed from Kanawha Mortgage and Discount Company $1500.00, and as evidence of the loan, executed 120 promissory notes in the principal sum of $22.05 each. The aggregate of these notes was $2646.00. These notes did not bear interest and it appears that the difference between the loan of $1500.00, and the aggregate of the principal of the 120 notes of $2646.00, amounted to $1146.00, and that the amount of the difference, being in excess of the legal rate of interest, rendered the transaction usurious. The question of usury, with respect to the foregoing loan, however, is not presented upon this appeal, and, for that reason, is not considered. The loan represented by these notes was secured by a deed of trust on other property owned by the defendant W. A. Ferrell. At the time of this transaction, Willie Arthur Ferrell, the son of Mary Logan Ferrell was less than three years of age, he having been born December 27, 1917, and it is clear beyond question that the W. A. Ferrell, who signed the 120 notes and who executed the deed hereinafter mentioned to R. H. Thomas, was the defendant William Ferrell, or W. A. Ferrell, the husband of Mary Logan Ferrell.

On February 14, 1924, the defendants, W. A. Ferrell and Mary Logan Ferrell, as husband and wife, conveyed the lot in question to R. H. Thomas for $2500.00, of which

amount $150.00 was paid in cash and the residue of $2350.00 was evidenced by 94 interest bearing notes in the principal sum of $25.00 each, which notes were signed by Thomas and were payable monthly to the defendant, W. A. Ferrell. Payment of the 94 notes was secured by a deed of trust dated February 14, 1924, made by Thomas and his wife to W. L. Poling, trustee, upon the property conveyed to Thomas by the Ferrells. This deed of trust has not been formally released by any written instrument and it constitutes the alleged cloud upon the title of the plaintiff which she seeks to have removed in this suit.

After the 94 notes were executed they were delivered by the Ferrells to Kanawha Mortgage and Discount Company either for collection or as collateral security for the 120 notes of $22.05 each executed by the Ferrells and owned by that company. The character of the arrangement under which the 94 notes were placed with the company does not clearly appear from the evidence. The evidence is also silent as to any separate payments made by the Ferrells of any of the 120 notes held by the company. It appears, however, that Thomas, after paying to the company some of the 94 notes, and after the dwelling on the lot had been destroyed by fire some time in 1925, defaulted in the payment of the remaining notes. Prior to September 24, 1925, Kanawha Mortgage and Discount Company was reorganized and its name was changed to Guaranty Investment Company, and an arrangement was entered into between it and Thomas by which Guaranty Investment Company should acquire the title to the lot which had been conveyed to Thomas by the Ferrells and which was subject to the deed of trust of February 14, 1924, and the remaining unpaid notes executed by Thomas should be surrendered to the company. By deed dated September 24, 1925, Thomas and wife conveyed the property, designated in the deed as Lot "C", to the Guaranty Investment Company. The deed recites that as part of the consideration Guaranty Investment Company, as grantee, assumed "the payment of eighty unpaid purchase money notes of R. H. Thomas, for twenty-five dollars each, bearing date of February 14,

1924, and payable to W. A. Ferrell". Subsequently Guaranty Investment Company became involved in financial difficulties and a receiver was appointed to administer its assets in a suit apparently instituted for that purpose in the Circuit Court of Kanawha County. By deed dated August 3, 1938, John E. Amos, Special Commissioner, presumably appointed as such in the receivership suit, conveyed the property in question to Sarah Solof and D. A. Abrams, who, by deed dated August 27, 1943, conveyed it to the plaintiff, the present owner. The bill of complaint alleges that all of the 94 notes executed by Thomas, payable to the defendant, W. A. Ferrell, have been paid and that the defendants, W. A. Ferrell and Mary Logan Ferrell "well knowing that the same have been paid" refuse to execute a release of the deed of trust made by Thomas and wife to secure their payment. By their joint and separate answer the defendants deny that any of the notes secured by the deed of trust, the payment of which the bill of complaint alleges was assumed by the Guaranty Investment Company, has been paid or satisfied. Thus it is clear that the sole question involved is whether these notes have been paid.

The evidence shows clearly that the 120 notes in the principal sum of $22.05 each, executed by the defendants, W. A. Ferrell and Mary Logan Ferrell, and the 94 interest bearing notes in the principal sum of $25.00 each, executed by R. H. Thomas, came into the possession of Kanawha Mortgage and Discount Company and its reorganized and renamed successor, Guaranty Investment Company. It is also clear from the evidence that none of these notes can now be produced or located. The evidence is conflicting as to the amount of the loan made by Kanawha Mortgage and Discount Company to the Ferrells, and as to the arrangement under which the 94 notes executed by Thomas came into the possession of the company. The defendant, Mary Logan Ferrell, who testified upon two separate occasions, when first called as a witness stated that the amount of the loan was $1500.00 but the second time she testified she said the amount was $750.00. Her husband, the defendant,

William (W. A.) Ferrell, who as a witness gave his name as Wilmont Ferrell, in his testimony referred to the amount of the loan as $1500.00 and did not at any time indicate that the amount was $750.00. The former president of the now defunct Guaranty Investment Company, John A. Parson, testified that the amount of the loan was $1500.00 and that the interest which was included in the principal of the 120 notes was $1146.00. The defendants, Mary Logan Ferrell and William (W. A.) Ferrell, both testified that the arrangement between them and Kanawha Mortgage and Discount Company with respect to the 94 notes executed by Thomas was that these notes were left with the company for collection with the understanding that as they were collected by the company the proceeds of each note was to be applied to the payment of one of the $22.05 notes held by the company and the difference was to be paid or credited to the Ferrells. They also testified that they had never been paid any difference between the proceeds of the Thomas notes and the notes executed by them to the company, and that the company had never accounted to them with respect to the notes executed by Thomas. Neither of these defendants testified, however, that any actual payments had been personally made by any of the defendants upon any of the 120 notes of $22.05 held by the company. The evidence offered by the defendants is also silent as to any demand for payment to them of any of the 94 notes executed by Thomas and held by the company and as to any effort made by them to collect any of the 94 notes or to enforce the deed of trust which secured their payment.

Each of the defendants, Mary Logan Ferrell and William (W. A.) Ferrell, testified that none of the 94 $25.00 notes had ever been sold to the company or anyone else and that none of them had ever been paid to any of the defendants. The former president of the Guaranty Investment Company, testifying as a witness in behalf of the plaintiff, stated that the 94 notes executed by Thomas payable to W. A. Ferrell were left with the Kanawha Mortgage and Discount Company for collection; that ten or twelve of these notes were paid by Thomas to the

company and the proceeds credited upon the Ferrell account; that Thomas, after the fire which destroyed the dwelling on the lot conveyed to him by the Ferrells, was unable to pay the remaining notes; that the title to the property was then taken by the Guaranty Investment Company in payment of the Thomas notes; that the Thomas notes were cancelled; that the Ferrells "made an exchange of notes"; that the 120 notes executed by the Ferrells and held by the company were paid by the cancellation of the Thomas notes by the company and the surrender by it to Mary Logan Ferrell of the notes signed by the Ferrells; and that a release of the deed of trust to secure those notes was given to Mary Logan Ferrell by the company. He also testified that the Thomas notes were sold by the Ferrells to the company and that the company had accounted to the Ferrells in full for the proceeds of those notes. This witness further testified that Guaranty Investment Company did not have the Thomas notes and that, as he recalled, those notes after being cancelled were delivered to Thomas who, according to the testimony of his wife, a witness in behalf of the plaintiff, had died prior to the time she testified. Mrs. Thomas testified that her husband handled all matters in connection with the purchase of the property, the payments made on the notes, and the transfer of the property to the company; and that such papers as he had were burned in the fire which destroyed the dwelling. It is evident that she had only slight knowledge of the details of these transactions and that she knew nothing of the whereabouts of the 94 notes.

Upon the recited facts and circumstances, which in substance constitute the evidence in this case, the Court of Common Pleas, in ordering the release of the deed of trust, necessarily found that the Thomas notes secured by that instrument, have been fully paid and discharged. The defendants seek reversal of the final decree on this appeal on the ground that this finding of the trial court is contrary to the preponderance of the evidence and, in consequence, the decree of the trial court is clearly wrong. They cite and rely upon *Buskirk* v. *Bankers*

*Finance Corporation,* 121 W. Va. 361, 3 S. E. 2d 450. They also contend that the evidence offered by the plaintiff to establish the payment of the Thomas notes is incredible and does not give rise to any inference of payment. These contentions are not well founded. Though the rule which prevails in this jurisdiction, and elsewhere, is that a decree based on conflicting evidence will be reversed when it appears that it is contrary to the preponderance of the evidence, or is clearly wrong, *Buskirk* v. *Bankers Finance Corporation,* 121 W. Va. 361, 3 S. E. 2d 450; *Meyers* v. *Washington Heights Land Company,* 107 W. Va. 632, 149 S. E. 819; *Blue* v. *Hazel-Atlas Glass Company,* 106 W. Va. 642, 147 S. E. 22; *Hendrick* v. *Jenkins,* 104 W. Va. 486, 140 S. E. 483, an equally well established rule is that the findings of the trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence. *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Hardin* v. *Collins,* 125 W. Va. 81, 23 S. E. 2d 916; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Tynes* v. *Shore,* 117 W. Va. 355, 185 S. E. 845; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620; *Ramsey* v. *England,* 85 W. Va. 101, 101 S. E. 73. A decree based on conflicting depositions, which are of such doubtful and unsatisfactory character that different courts might reasonably disagree as to the facts proved by, or the proper conclusion to be deduced from, such depositions, will not be reversed on appeal. *Kesterson* v. *Kesterson,* 102 W. Va. 331, 135 S. E. 182; *Crummett* v. *Crummett,* 102 W. Va. 151, 135 S. E. 16; *Ross* v. *McConnaughy,* 85 W. Va. 199, 101 S. E. 443; *Chrislip* v. *Teter,* 43 W. Va. 356, 27 S. E. 288; *Fitzgerald* v. *Phelps and Bigelow Windmill Company,* 42 W. Va. 570, 26 S. E. 315; *Smith* v. *Yoke,* 27 W. Va. 639.

It cannot be said that the testimony of the witness Parsons, to the effect that the Thomas notes had been paid by the cancellation of the Ferrell notes, is incredible, or that the inference of payment is refuted by the established facts and circumstances. On the contrary, despite

the denial of payment by the defendants, Mary Logan Ferrell and William (W. A.) Ferrell, the established facts and circumstances indicate clearly that the notes were paid. Unless they were paid in the manner testified to by Parsons the failure of the defendants to pay any of the 120 notes which they unquestionably owed the company can not be explained. It is clear that none of the defendants personally ever made any particular or actual payments on any of these notes, and it is evident that they would have been required by the company to make at least some payments on them unless they were paid in the manner indicated by the testimony of Parsons. None of the defendants asserts that these notes have not been paid, and their attitude in this case indicates clearly that they regarded the notes as having been paid and satisfied in full. These notes are no longer held by the company and the only reasonable conclusion is that they were surrendered to Mary Logan Ferrell as testified to by Parsons. Furthermore, if the Thomas notes had not been paid in full, it is unreasonable to believe that the Ferrells would have refrained, during a period of more than twenty years between their execution and the institution of this suit, from making some demand for payment or exerting some effort to collect them or to enforce the deed of trust. If the unpaid Thomas notes, at the time they were cancelled by the company and the Thomases conveyed the property to it, were eighty in number, as recited in the deed, the principal amount of these notes then owing was $2000.00. If the proceeds of the first 14 notes paid by Thomas were applied to the Ferrell notes, or credited to the account of the Ferrells, as indicated by the testimony of Parsons, which exclusive of a small amount of interest would be approximately $350.00, and the Ferrells had paid $88.20 in satisfaction of four $22.05 notes which had become due when the first Thomas note was payable, or an aggregate of $438.20, the unpaid residue of the Ferrell notes, aside from the question of usury, which seems never to have been raised by the Ferrells and is of course not presented in this suit, would have amounted to approximately $2207.80. In these circumstances it would have been clearly to the

advantage of the Ferrells to have their debt to the company of that approximate amount cancelled and extinguished by the cancellation of the principal amount of $2000.00 with interest owed them by Thomas on the 80 notes which the company, by accepting the deed from the Thomases, assumed to pay. Though the exact amount of any payments by the Ferrells, if indeed they made any payments, or the credits in their favor, on the 120 notes executed by them can not be determined from the evidence, it is obvious that their indebtedness to the company, when it assumed the payment of the 80 Thomas notes, exceeded or at least equalled the indebtedness represented by those notes, and that the Ferrells either gained, or suffered no loss, by the "exchange of notes" testified to by Parsons. The only reasonable conclusion, in view of the established facts and circumstances, is that the notes which Thomas owed the Ferrells, and which the company had assumed to pay, were satisfied by the surrender by the company to the Ferrells of the notes which the company then held against them. The finding of payment by the trial chancellor, in the light of the evidence, is neither against the preponderance of the evidence nor clearly wrong. In consequence, under the rule laid down by the cited decisions of this Court, the finding of the trial chancellor will not be disturbed on this appeal.

The final decrees of the Circuit Court and the Court of Common Pleas of Kanawha County are affirmed.

*Affirmed.*