SHELBY L. STURM, *et al.*

*v.*

THE CITY OF SAINT ALBANS, *et al.*

(No. 10569)

Submitted September 22, 1953. Decided November 24, 1953.

912

*Kay, Casto & Chaney, Robert H. C. Kay,* for appellants.

*Poffenbarger & Bowles, Martin C. Bowles,* for appellees.

HAYMOND, PRESIDENT:

This suit in equity was instituted in the Circuit Court of Kanawha County in August, 1951, by the plaintiffs Shelby L. Sturm, Helene T. Simms, Grace S. Miller, Willie S. Sturm, heirs at law of W. H. Simms, deceased, John Hunt, Walter G. Woods, H. C. Pittenger, Harold B. Leighty, Bertha K. Herzog, Bessie Early, John Coughlin, R. K. Byus, L. H. Seldomridge, Cecil E. McClung, Enoch Wills, Webb Holesapple, Sallie Thomas, L. G. Smith, W. R. Orders, Howard L. Hutchinson, Ella McClung and A. L. Hughes, owners of lands abutting on a public highway, or city street, designated as Alternate

United States Route 60, and a part of the secondary road system of West Virginia within the City of Saint Albans, for an injunction against the defendants, the City of Saint Albans, a municipal corporation, Gregory L. Funk, its mayor, and O. N. Slater, its clerk. The plaintiffs seek to enjoin the defendants from entering into a contract to build and construct curb and sidewalks abutting the properties of the various plaintiffs along Alternate United States Route 60, also known as Kanawha Terrace, in connection with the paving and the resurfacing of that street between Pennsylavnia Avenue at a point near its junction with Second Street, in the business section, and the eastern limits of the city, the proposed improvement covering a distance of approximately two miles, and from assessing any portion of the cost against the properties of the respective plaintiffs.

To the bill of complaint of the plaintiffs the defendants filed their joint and several answer and, upon the bill of complaint, the answer of the defendants, and the general replication of the plaintiffs, the questions presented by the pleadings were referred by the circuit court to one of its commissioners in chancery. The commissioner after hearing the testimony of numerous witnesses produced by the respective parties made and filed his report which contained several findings of law and fact. Numerous exceptions were taken by the plaintiffs to the report of the commissioner, all of which were overruled, and the report, except an item of the estimated assessment for curb against a lot of the plaintiff Shelby L. Sturm fronting 100.2 feet on Kanawha Terrace, the amount of which was changed from $2605.20 to $260.52, was confirmed and the findings of law and fact of the commissioner were adopted by the court. By final decree entered June 21, 1952, the circuit court refused to grant the plaintiffs, other than the plaintiff A. L. Hughes, the relief prayed for in their bill of complaint, held that the defendants had the right to construct curb and sidewalks on Kanawha Terrace on which the properties of the respective plaintiffs abut and to assess the costs of con-

structing such curb and sidewalks against such properties, found and declared each of such properties to be benefited by the construction of the curb and sidewalks in an amount in excess of the cost of constructing them, except one hundred feet of the abutting property owned by the plaintiff A. L. Hughes which was found and declared not to be benefited to any extent by the proposed improvements, and enjoined the defendants from assessing any part of the cost of constructing the curb or the sidewalks against such one hundred feet of property. The decree also provided that the defendants recover costs from the plaintiffs other than the plaintiff A. L. Hughes and that the costs which would have been charged to him if he had been one of the losing parties, be paid by the defendants. From the foregoing decree this Court granted this appeal upon the petition of the appellants who are all the plaintiffs except the plaintiff A. L. Hughes.

Sometime in the early part of 1951 the council of the City of Saint Albans proposed a resolution to install curb and sidewalks along Kanawha Terrace from Second Street to a point in the dividing line between Lot No. 24 and Lot No. 25 of the A. L. Hughes Addition near the eastern limits of the city, Lots No. 15, 16, 17, 18 and 19 of which addition each fronting fifty feet on Kanawha Terrace are owned by the plaintiff A. L. Hughes, and to construct other specified improvements in that section, and fixed April 16, 1951, as the date to receive protests of the owners of land abutting on that street within that area. At that meeting a number of such property owners entered their protests and the council by a six to three vote of its members refused to authorize the project. The proposed improvements were to be constructed in conjunction with the state road commissioner who apparently had decided to pave and resurface at the expense of the State that section of the street and to widen it at various points for a distance of from five to ten feet. The plans, profiles, and estimates were prepared by the city engineer and

approved by the council on March 19, 1951. According to these plans, which were also approved by the state road commissioner, curb was to be constructed by the city to a height of seven inches above the surface or the traveled portion of the street and new sidewalks were to be built of three, four, or six feet in width on various abutting properties where no sidewalks existed and existing sidewalks on other abutting properties were to be repaired, renewed or extended.

After the meeting of April 16, 1951, a new movement to authorize the project was initiated by a number of abutting property owners, including some who had previously protested against it, and the council fixed May 28, 1951, as the date of a meeting to receive the protests of abutting landowners. At that meeting protests of the plaintiffs were presented to and considered by the council. Reasons were stated but no evidence was offered in support of the protests of the plaintiffs. The council rejected the contentions of the plaintiffs and by an ordinance adopted by a vote of seven to one, the plaintiff Shelby L. Sturm, a member of the council, casting the single negative vote, the construction of the curb and the sidewalks according to the original plans of the city engineer was authorized.

On June 15, 1951, after the passage of the ordinance, the city advertised for bids, and later apparently entered into a contract with a construction contractor for the performance of the work though the evidence on this point is not clear. The estimated amount of the proposed assessments against the properties of the abutting landowners, including engineer and attorney fees and other costs, according to the bid of the contractor, appears to be $4.27 per foot for curb and sidewalks and $2.60 per foot for curb without sidewalks. The cost of the curb was based on the number of lineal feet and the cost of the sidewalks was based upon the number of square feet of construction. As estimated by the city engineer, the cost appears to be at the rate of $3.62 per

lineal foot for curb and sidewalks and $2.54 per lineal foot for curb without sidewalks. The proposed assessment again each parcel appears to have been calculated at the rate of the contractor's bid upon the number of feet each parcel abuts upon Kanawha Terrace. The institution of this suit operated to prevent construction of the curb and the sidewalks and, that work not having been undertaken or completed, no assessments have yet been made against the abutting properties of the plaintiffs.

Included in the proposed improvements are two sections of curb and sidewalk along the northern edge of Kanawha Terrace in the areas which are respectively designated as 1 and 2 on sheet one of the plans, profiles and estimates of the city engineer, filed as an exhibit with the bill of complaint. The proposed sidewalk in section 1 is three feet wide and the proposed sidewalk in section 2 is four feet wide. It was stipulated by the attorneys for the respective parties that the area indicated by the figure 1 is a part of Kanawha Terrace, or Seventh Avenue, or Fourth Street, the two latter being city streets, or is a part of each of those three streets; and that the area indicated by the figure 2 is a part of Kanawha Terrace, or Seventh Avenue, or Fifth Street, another city street, or is a part of each of those three streets. It thus appears that both the foregoing sections of proposed curb and sidewalk are located on one or more public streets. The testimony before the commissioner also shows that none of the properties of the plaintiffs abuts on either of those sections of proposed curb and sidewalk. The city engineer testified that he considered the area designated by the figure 1 on sheet one of the plans as an intersection and the circuit court, adopting the findings of the commissioner who concluded that the apportionment of the cost of the curb and the sidewalks in sections 1 and 2 amounted to approximately ten cents per foot for the property of each of the plaintiffs, found that the areas designated by the figures 1 and 2 were an intersection.

On the question of the value of the benefits of the curb and the sidewalks to the various abutting properties of the plaintiffs as compared to their cost, in the event the proposed improvements are completed according to the plans prepared by the city engineer, there is a conflict in some portions of the evidence given by the witnesses who testified before the commissioner.

The plaintiff Shelby L. Sturm testified generally concerning the abutting properties owned by him and his wife and the other plaintiffs and in some detail concerning a triangular lot improved with a frame dwelling owned by him on the northern side of Kanawha Terrace, at its junction with Seventh Avenue, an unimproved city street, which lot abuts on Kanawha Terrace three hundred and thirty feet, and the residence property owned by the plaintiff H. C. Pittenger, also on the northern side of Kanawha Terrace and abutting sixty feet on that street. He testified that the construction of curb and sidewalk in front of his triangular lot, the proposed assessment for which, at the rate of $4.27 per foot, is $1409.10, would not benefit that property to the extent of the amount of the cost of the improvements and that the construction of curb in front of the various properties of the other plaintiffs would not benefit any of those properties to the extent of the cost of such curb. A real estate dealer, produced as a witness in behalf of the plaintiffs, testified that the construction of the proposed improvements in front of the triangular shaped property of the plaintiff Shelby L. Sturm and in front of the property of the plaintiff H. C. Pittenger would not increase the value of either of those properties.

An appraiser of real estate, offered as a witness by the defendants, testified that the construction of the proposed improvements in front of the various properties of each of the plaintiffs would benefit the property of each of them in an amount in excess of the cost of such improvements, except the triangular lot of the plaintiff Shelby L. Sturm and the property of the plaintiff A. L.

Hughes abutting two hundred and fifty feet on Kanawha Terrace, and that as to each of those properties the benefit resulting from the construction of the proposed improvements would equal the cost of each improvement. He testified, however, that if Kanawha Terrace should be abandoned as a secondary state highway by the state road commissioner each of the foregoing properties of the plaintiffs Shelby L. Sturm and A. L. Hughes would not be benefited to the extent of the cost of the improvements to each of those two properties. Two real estate dealers, also witnesses in behalf of the defendants, testified that the construction of the proposed improvements would benefit the property of each of the plaintiffs to an amount in excess of the cost of the improvements to each property.

By their assignments of error the appellants seek reversal of the final decree of June 21, 1952, on substantially these grounds: (1) The City of Saint Albans is without authority to assess the properties of the respective plaintiffs with the cost of constructing the proposed curb on Kanawha Terrace, a secondary state highway in the city, on which those properties abut, or to assess the cost of constructing the two sections of proposed curb and sidewalk which are located respectively on Kanawha Terrace, or Seventh Avenue, or Fourth Street, or on Kanawha Terrace, or Seventh Avenue, or Fifth Street, or partly on each of those respective streets within the city, against the properties of the respective plaintiffs, or to include the cost of constructing the proposed improvements in front of the property of the plaintiff A. L. Hughes abutting one hundred feet on Kanawha Terrace against the properties of the respective appellants; and (2) the construction of the proposed curb and sidewalks will not increase the value of the property of any of the respective plaintiffs in an amount equal to the cost to be assessed against each of such abutting properties.

The city undertakes the construction of the proposed curb and sidewalks and attempts to charge the abutting properties of the respective plaintiffs with the cost of

such construction under the provisions of Sections 1, 2 and 6, Article 8, Chapter 89, Acts of the Legislature, 1949, Regular Session, which are incorporated as Sections 1, 2 and 6, Article 8, Chapter 8, Code, 1931, as amended. The pertinent provisions of those sections are:

"Section 1. Every municipal corporation in this state, * * *, is hereby authorized and empowered, in addition to any other rights or powers conferred upon it, * * *, to grade, regrade, pave or repave, surface or resurface, curb or recurb, streets and alleys, and to build or renew sidewalks, and to construct, provide or renew any of such improvements or other permanent public improvements in any streets, alleys, public ways of easements, or portions thereof, in such municipality, * * *, and to assess the costs of any or all of such improvements on abutting property."

"Section 2. Upon the petition in writing of persons owning the greater amount of frontage of property abutting upon both sides of any portion of a street, public way, alley, or easement, for any permanent improvement or reimprovement authorized in section one hereof the council or other governing body of any such municipality, by a lawful majority thereof, may, after giving notice to abutting property owners as in this article is provided, by resolution or ordinance declare the necessity or convenience of such improvement and order and cause such portions of such streets, alleys, public ways or easements to be graded, regraded, paved, repaved, surfaced, resurfaced, curbed, recurbed, sewered, resewered, permanently improved, or reimproved with sidewalks or otherwise permanently improved or reimproved with suitable material, or any one or more of such improvements without the others, as may be determined by the governing body, to be constructed therein or in such part or parts thereof as the governing body may determine, and such governing body may specially assess the entire cost of such improvements, or any part thereof, upon the property abutting on the portions of the streets, alleys, public ways or easements improved.

"Such governing body of the municipality may also adopt such resolution or ordinance of necessity or convenience and provide for such improvements and the assessing of the cost thereof upon abutting property without such a petition of property owners having first been received, when the resolution or ordinance providing for such improvement is adopted by the affirmative vote of at least three-fourths of the members of such governing body by recorded vote, after having given notice to abutting property owners as hereinafter provided."

"Section 6. The cost of the entire project, including the cost of all improvements at and within intersections, shall be apportioned to, and assessed against, and borne by the properties abutting upon the streets, public ways, alleys or easements upon which the improvements involved in the project shall have been made. Each lot or parcel of land so abutting shall be assessed with that portion of the total cost of the entire project which is represented by the proportion which the abutting frontage in feet of such lot or parcel bears to the total abutting frontages in feet of all the lots or parcels of land abutting on the streets, public ways, alleys or easements so improved: * * * *Provided further*, That if there be any land or other property abutting on the portion of the street or alley so improved which it has been determined by the governing body of the municipality, and, shown in the ordinance or resolution authorizing the improvement, not to be specially benefited by the improvement, or for other reasons would not be liable to assessment for any of the cost of improvement, then the cost of the improvements abutting such part of said street or alley as is so determined to be nonassessable shall be apportioned among, assessed and borne by the remaining property abutting upon the portion of the street, alley, public way or easement improved in proportion to the frontage of such remaining abutting property as hereinabove provided: *Provided further*, That if such improvement include the construction or reconstruction of sidewalks on only one side of a street,

alley, public way or easement, then the cost of such sidewalk shall be assessed only on the property abutting on that side where the sidewalks are so constructed: * * *."

Section 14 of the statute provides that Article 8 shall be liberally construed to accomplish the purpose of affording reasonable, economical and expeditious means for municipalities to provide permanent improvements and to assure contractors or other persons directly or indirectly financing such improvements security for the payment of the cost and the expense of such improvements.

The first contention of the appellants is that the quoted provisions of Sections 1, 2 and 6, Article 8, Chapter 89, Acts of the Legislature, 1949, Regular Session, do not authorize or empower the City of Saint Albans to construct the proposed curb on Kanawha Terrace because Kanawha Terrace, being a secondary state highway and the proposed curb being a part of the street, it is the statutory duty of the state road commission to construct such curb and to pay the cost of such construction from money received by or appropriated to the commission for that purpose. To support that contention the appellants cite and rely upon Section 28, Article 1, Chapter 40, Acts of the Legislature, 1933, First Extraordinary Session, Section 2, Article 3, Chapter 17, Code, 1931, and Sections 1 and 2, Article 4, Chapter 40, Acts of the Legislature, 1933, First Extraordinary Session.

Section 28, Article 1, provides that state roads shall include all roads classified and prescribed as primary roads and secondary roads. Section 2, Article 3, provides that the cost and the expense of the construction, reconstruction, improvement or maintenance of all state roads shall be paid out of any money received by or appropriated to the state road commission for that purpose. Section 1, Article 4, declares that the state road system shall consist of the primary and secondary roads of the state as defined by statute and that the authority and the control of state roads shall be vested in the state road commissioner; and Section 2, Article 4, declares that the

state road commissioner shall take over county—district roads on July 1, 1933, and assume charge of their further construction, reconstruction and maintenance as a part of the state road system.

Section 4, Article 4, Chapter 40, Acts of the Legislature, 1933, First Extraordinary Session, provides that the authority and the control of state roads vested in the state road commissioner shall include, among other things, the power to construct, reconstruct, repair and maintain state roads; and Section 27, Article 4, Chapter 109, Acts of the Legislature, 1945, Regular Session, in part provides that the state road commissioner shall exercise the same control over connecting parts of the state road system in municipalities, except the regulation of traffic, that he exercises over such system generally but that he shall assume no greater duty or obligation in the construction, reconstruction and maintenance of streets as primary and secondary roads than he is required to assume in the case of state roads outside of municipalities. By Section 36, Article 4, Chapter 40, Acts of the Legislature, 1933, First Extraordinary Session, the state road commissioner is also authorized to construct and maintain sidewalks along state roads whenever the safety or the convenience of the traveling public may demand such sidewalks.

In considering the foregoing contention of the appellants, in the light of the statutory provisions quoted or referred to, it should be observed that none of the stated portions of Sections 1, 2 and 6, Article 8, Chapter 89, Acts of the Legislature, 1949, Regular Session, contains any provision which, expressly or by necessary implication, excludes a state road, whether primary or secondary, within a municipality, from the operation of any of those sections. The language of those sections is broad and comprehensive and by Section 14 should be liberally construed. By virtue of those sections a municipal corporation has the authority to construct curb in and sidewalks along a state road within the municipality and to

assess the cost against abutting properties as provided in such sections; and, with the approval of the state road commissioner and in the absence of the construction by him of such curb and sidewalks, it may exercise such authority.

Although the state road commissioner under the provisions of Section 1, Article 4, is vested with authority and control of state roads, both primary and secondary, and under the provisions of Section 4, Article 4, is vested with the power to construct, reconstruct, repair and maintain state roads, and under the provisions of Section 36, Article 4, has the authority to construct and maintain sidewalks along state roads whenever the safety or the convenience of the traveling public demands such sidewalks, and although Section 27, Article 4, provides that he shall exercise the same control over connecting parts of the state road system in municipalities, except the regulation of traffic, that he exercises over such system generally but that he shall assume no greater duty or obligation in the construction, reconstruction and maintenance of streets as primary and secondary roads in munipalities than he is required to assume in the case of state roads outside of municipalities, the state road commissioner is not by those statutory provisions, or by any other statutory provision that has been cited to or found by this Court, required in every instance to construct and pay for, with money received or appropriated for that purpose, curb or sidewalks for a primary or a secondary state road in any municipality in this State. It is a matter of common knowledge that few, if indeed any, of the state roads in this State, outside of municipalities, are provided with curb which extends above the surface or traveled portion of such roads or with accompanying sidewalks of the character generally provided in connection with the construction of city streets. To build curb of that character or sidewalks in the construction of state roads outside of the municipalities of this State in every instance or to any considerable extent is obviously a practical impossibility because of the prohibitive cost and the

utter lack of funds for any such comprehensive purpose or design, though obviously the commissioner, in the exercise of the discretion with which he is necessarily vested by the applicable statutes, may do so to a limited extent, and in particular instances to be determined by him, in the proper exercise of such discretion.

The state road commissioner, in the performance of the statutory duties imposed upon him, is not required to construct and pay for curb in and sidewalks along a state road within a municipality which the municipality proposes to construct in and along such state road, but, in the exercise of the discretion vested in him, he may construct and pay for such proposed improvements. As he has not decided or undertaken to construct and pay for the curb and the sidewalks which the City of Saint Albans proposes to construct and has approved the improvements which it proposes to make, the city may exercise the authority conferred upon it by Sections 1, 2 and 6, Article 8, Chapter 89, Acts of the Legislature, 1949, Regular Session, to construct the proposed curb and sidewalks and to assess the cost against the abutting properties as provided by those sections of the statute.

The appellants insist that curb is a part of a street rather than a part of a sidewalk and in support of that position cite and rely upon two cases in other jurisdictions and a recent decision of this Court. *Allegheny City* v. *Blair*, 74 P. St. 225; *City of Excelsior Springs* v. *Ettenson*, 120 Mo. App. 215, 96 S. W. 701; *Smith* v. *The City of Bluefield*, 132 W. Va. 38, 55 S. E. 2d 392. In the *Allegheny City* case, involving the power of a city, under a statute, to grade, pave and curb its streets and assess the cost against abutting lots, the opinion on that subject contains this brief statement: "It is agreed by the case stated that the curbing in question was necessary for the proper support and protection of the street, and was therefore a proper part of the charge for paving, for which the defendant was liable * * *." In the *City of Excelsior Springs case*, the Kansas City Court of Appeals said that

under a statute authorizing certain cities to cause streets to be "graded, constructed, reconstructed, paved" a city could issue special tax bills to pay for the cost of curbing and that the words "constructed" and "paved" referred to the entire pavement of the street and included curbing as a necessary part of the street. In the *Smith* case this Court held, in disposing of a preliminary question in the case, that the word "streets", as used in Section 26, Article 4, Chapter 40, Acts of the Legislature, 1933, First Extraordinary Session, which gives the state road commissioner the right to designate and take over "streets and bridges" in municipalities, as part of the state highway system, does not include sidewalks.

None of the cited cases expressly decides that in any or every instance curb is part of a street as distinguished from a sidewalk. In 25 Am. Jur., Highways, Sections 7, a street is said to be a public thoroughfare in an urban community such as a city, town, or village, and a sidewalk is characterized as a walkway along the margin of a street or other highway, designed and prepared for the use of pedestrians to the exclusion of road vehicles and horsemen, which may embrace all that portion of a street from the building line to the curb and includes grassplats or park strips between the walk proper and the curb. The same section of that treatise also contains this language: "Generally, the term 'street' includes sidewalks, and the sidewalk constitutes a part of the street. But in no sense, it is said, can the term 'sidewalk' be held to include the street proper."

The language of Section 1, Article 8, Chapter 89, Acts of the Legislature, 1949, Regular Session, conferring power and authority upon a municipal corporation "to grade, regrade, pave or repave, surface or resurface, curb or recurb, streets and alleys" indicates that curb is a part of a street, as distinguished from a sidewalk, within the meaning of that section of that statute. Whether curb is a part of a street, when a street is regarded merely as the traveled portion of a highway, or a part of a sidewalk, is

not material to the decision of any issue in this case and, for that reason, it is unnecessary to determine that question. Whether curb is a part of a street, or is a part of a sidewalk, or, when it is placed between the street and the sidewalk and is joined to both, is a part of the street and also a part of the sidewalk, Section 1, Article 8, for the reasons expressed in preceding portions of this opinion, authorizes and empowers the City of Saint Albans to construct the curb and the sidewalks on Kanawha Terrace, as proposed by the city, and to charge the cost against abutting properties as provided by that section of the statute.

The second contention of the appellants is that the City of Saint Albans is without authority to assess the cost of constructing two sections of proposed curb and sidewalk, which are located respectively on Kanawha Terrace or Seventh Avenue or Fourth Street or on Kanawha Terrace or Seventh Avenue or Fifth Street, or partly on each of those respective streets within the city, against the properties of the respective plaintiffs. The location of those respective sections of proposed curb and sidewalk upon those streets, as just stated, is established by the stipulation of counsel for the respective parties to this suit. The city engineer, in his testimony before the commissioner, treated and considered the area on which those sections are located as an intersection and the circuit court, in adopting the finding of the commissioner on that question, found that area to be an intersection. From sheet one of the plans, profiles and estimates prepared by the city engineer and the testimony before the commissioner it is clear that the area on which those sections are located is not an intersection and that none of the properties of any of the plaintiffs abuts on either of those sections. Though there is some conflict in the evidence on that question, the finding of the circuit court that those sections are located upon an intersection is contrary to the preponderance of the evidence and is clearly wrong. Accordingly that finding should be set aside and so much

of the final decree as confirms such finding, includes the cost of those sections of curb and sidewalk in the proposed assessments against the properties of the respective plaintiffs, and sustains the present amounts of those assessments, should be reversed. A decree based on conflicting evidence will be reversed when it appears that it is contrary to the preponderance of the evidence or is clearly wrong. *Adams* v. *Ferrell,* 135 W. Va. 463, 63 S. E. 2d 840; *Mullens* v. *Lilly,* 123 W. Va. 182, 13 S. E. 2d 634; *La Follette* v. *Croft,* 122 W. Va. 727, 14 S. E. 2d 917; *Tokas* v. *J. J. Arnold Company,* 122 W. Va. 613, 11 S. E. 2d 759; *Buskirk* v. *Bankers Finance Corporation,* 121 W. Va. 361, 3 S. E. 2d 450; *Pickens* v. *O'Hara,* 120 W. Va. 751, 200 S. E. 746; *Gall* v. *Cowell,* 118 W. Va. 263, 190 S. E. 130; *Smith* v. *Pew,* 116 W. Va. 734, 183 S. E. 53; *Lemen-Downs* v. *Beltzhoover,* 111 W. Va. 207, 161 S. E. 440; *Jones* v. *Hoard,* 108 W. Va. 308, 151 S. E. 183; *Meyers* v. *Washington Heights Land Company,* 107 W. Va. 632, 149 S. E. 819; *Blue* v. *Hazel-Atlas Glass Company,* 106 W. Va. 642, 147 S. E. 22; *Hendrick* v. *Jenkins,* 104 W. Va. 486, 140 S. E. 483; *Rice* v. *Rice,* 88 W. Va. 54, 106 S. E. 237; *McGraw* v. *Morgan,* 81 W. Va. 331, 94 S. E. 370; *Wallace* v. *Douglas,* 58 W. Va. 102, 51 S. E. 869; *Pearson* v. *West Virginia Lime and Cement Company,* 56 W. Va. 650, 49 S. E. 418.

The third contention of the appellants that the City of Saint Albans is without authority to include the cost of constructing curb or sidewalk in front of the property of the plaintiff A. L. Hughes abutting 100 feet on Kanawha Terrace against any of the properties of the respective appellants is devoid of merit. Section 6, Article 8, Chapter 89, Acts of the Legislature, 1949, Regular Session, relating to the apportionment and the assessment of the cost of the improvements mentioned in the section provides in part that "if there be any land or other property abutting on the portion of the street or alley so improved which it has been determined by the governing body of the municipality, and, shown in the ordinance or resolution authorizing the improvement, not to be specially

benefited by the improvement, *or for other reasons* would not be liable to assessment for any of the cost of improvement, then the cost of the improvements abutting such part of said street or alley as is so determined to be non-assessable shall be apportioned among, assessed and borne by the remaining property abutting upon the portion of the street, alley, public way or easement improved in proportion to the frontage of such remaining abutting property as hereinabove provided: * * *." (Emphasis supplied). Under the statutory provision just quoted the circuit court having found, upon evidence which sufficiently supports that finding, that the property of the plaintiff A. L. Hughes, abutting 100 feet on Kanawha Terrace, would not be benefited to the extent of the cost of the proposed improvement in front of that property it is not liable to assessment for any of the cost of the improvement and the cost of the improvement abutting that property is to be apportioned among, assessed and borne by the remaining property of the respective plaintiffs abutting upon the portion of Kanawha Terrace to be improved in proportion to the frontage of the abutting property of each of the respective plaintiffs. By virtue of the statute, the decree of the circuit court to that effect is correct and proper.

The fourth and final contention of the appellants that the construction of the proposed curb and sidewalk will not increase the value of the properties of each of them respectively in an amount equal to the cost to be assessed against each of such abutting properties is not tenable. The testimony of the witnesses before the commissioner on that question was conflicting and the finding of the commissioner, adopted by the circuit court, is amply supported by the evidence. For that reason the finding of the circuit court and the decree based upon such finding will not be disturbed by this Court. The rule is well established in this jurisdiction, and elsewhere, that the findings of fact of a trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance

of the evidence. *McCausland* v. *Jarrell,* 136 W. Va. 569, 68 S. E. 2d 729; *Holt Motors* v. *Casto,* 136 W. Va. 284, 67 S. E. 2d 432; *Adams* v. *Ferrell,* 135 W. Va. 463, 63 S. E. 2d 840; *Carpenter* v. *Ohio River Sand and Gravel Corporation,* 134 W. Va. 587, 60 S. E. 2d 212; *Ghiz* v. *Savas,* 134 W. Va. 550, 60 S. E. 2d 290; *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E. 2d 594; *Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793; *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Hardin* v. *Collins,* 125 W. Va. 81, 23 S. E. 2d 916; *Shipper* v. *Downey,* 119 W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Tynes* v. *Shore,* 117 W. Va. 355, 185 S. E. 845; *Cohen* v. *Smith,* 114 W. Va. 813, 174 S. E. 521; *Raleigh County Construction Company* v. *Amere Gas Utilities Company,* 113 W. Va. 854, 169 S. E. 785; *Roberts* v. *Roberts,* 108 W. Va. 71, 150 S. E. 231; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620; *Ramsey* v. *England,* 85 W. Va. 101, 101 S. E. 73.

The final decree entered June 21, 1952, to the extent that it holds that the area on which the two sections of proposed curb and sidewalk designated 1 and 2 on sheet one of the plans, profiles and estimates prepared by the city engineer is an intersection, includes the cost of those sections in the proposed assessments against the properties of the respective plaintiffs, and sustains the present amounts of those assessments, is reversed and set aside, but in all other respects such final decree is affirmed; and this suit is remanded to the circuit court with directions that it correct and modify such decree to conform to the holding of this Court as indicated in this opinion.

As the defendants are the parties substantially prevailing on this appeal they are entitled to recover the costs incurred and expended by them in this Court.

*Reversed in part;*
*affirmed in part; and*
*remanded with directions.*