P. E. GLENN et al., Appellants,

v.

CITY OF ARLINGTON, Texas, Appellee.

No. 16396.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 18, 1963.

Rehearing Denied March 1, 1963.

Ernest May, Fort Worth, for appellants.

Simon, Crowley, Wright, Ratliff & Miller, James E. Wright and Wayne A. Rohne, Fort Worth, for appellee.

MASSEY, Chief Justice.

The question involved is whether, in view of Art. 6674d, "Federal aid", and Art. 6674q–4, "Improvements under control of State Highway Department" (to be found under Vernon's Ann.Tex.St. Title 116, "Roads, Bridges, and Ferries", ch. 1, "State Highways"), the City of Arlington, Texas, had authority and jurisdiction to levy upon abutting property owners assessments for improvements it desired to have constructed incident to the improvement and general reconstruction of U. S. Highway #80. The improvement and general reconstruction was undertaken by the Texas State Highway Department with aid of funds supplied by the Federal Government under U.S.C.A., Title 23, "Highways".

The particular improvement for installation or construction of which the city levied assessment against the property owners was for the curb and gutter alongside the paved and improved portion of U. S. Highway #80 immediately in front of their several properties, although on highway premises. There was no federal aid involved in this particular improvement. It could only be by way of coupling the cost thereof with the expenses of the State in the widening and reconstruction of U. S. Highway #80 that federal aid could be said to have paid a part of the cost. By suit the several property owners sought to have the assessment declared void. For this improvement the City of Arlington paid, or agreed to pay, although under an arrangement between the City and the State the contract under which the improvement was installed was one between the State and the contractor.

In view of V.A.T.S. Title 28, "Cities, Towns and Villages", ch. 13, "Home Rule", Art. 1175, "Enumerated powers", sec. 16, it is not to be doubted that the City of Arlington, a Home Rule City, formerly possessed the right to construct or provide out of municipal funds for the construction of such an improvement. If in its legislative discretion, unabused, the same constituted a local improvement which enhanced the value of the adjacent property it is admitted that it could formerly levy an assessment thereon for the payment of its cost under and according to provisions of V.A.T.S., Art. 1105b, "Street improvements and assessments. * * *" It is not manifest in the instant case that the installation of the curb and gutter was not an improvement of local pertinence and benefit rather than one benefiting the public generally.

The 39th Legislature, in 1925, enacted Art. 6674d, wherein it provided that "All further improvement of said State Highway System with Federal aid shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the Legislature out of the State Highway Fund. * * * Surveys, plans, specifications and estimates for all further improvement of said system with Federal aid or with Federal and State aid shall be made and prepared by the State Highway Department. No further improvement of said system shall be made under the direct control of the commissioners' court of any county unless and until the plans and specifications for said improvement have been approved by the State Highway Engineer."

The 42nd Legislature, in 1932, enacted Art. 6674q–4, wherein it was provided that "All further improvement of said State Highway System shall be made under the exclusive and direct control of the State Highway Department and with appropriations made by the Legislature out of the State Highway Fund. Surveys, plans and specifications and estimates for all further construction and improvement of said system shall be made, prepared and paid for by the State Highway Department. No further improvement of said system shall be made with the aid of or with any moneys furnished by the counties except the acquisition of right-of-ways which may be furnished by the counties, their subdivisions or defined road districts. * * * In the development of the System of State Highways and the maintenance thereof, the State Highway Commission shall from funds available to the State Highway Department, provide: (a) For the efficient maintenance of all highways comprising the State System. (b) For the construction, in co-operation with the Federal Government to the extent of Federal Aid to the state, of highways of durable type of the greatest public necessity. (c) For the construction of highways, perfecting and extending a correlated system of State Highways, independently from state funds."

It is only by reason of these types of statutes vesting authority in state highway departments that highways within the several states may be designated as part of the Federal-Aid primary system and improved with Federal aid. 23 U.S.C.A., "Highways", ch. 1, "Federal-Aid Highways", and ch. 3, "General Provisions". U. S. Highway #80, in Texas, is a part of the Federal-Aid primary system as defined in sec. 103 sub. (b), "Federal-Aid systems". This state, in the enactment of the statutes, was obviously taking precaution that it be fully qualified to benefit and participate in any federal assistance available should such be its desire.

It is to be observed that under "Enumerated powers" of Home Rule cities, V.A.T.S., Art. 1175, sec. 16, purported to confer jurisdiction and authority upon these cities to improve highways within their municipal limits. The words used therein are "exclusive dominion, control, and jurisdiction". It specifically provides that when such a city "provides for" such an improvement, it may "charge the cost" thereof against the abutting property and its owner.

Seemingly, Art. 6674d and Art. 6674q–4 conflict with Art. 1175, in their provision that all improvements of the State Highway System, of which highways lying within the municipal boundaries of Home Rule cities would be an integral part, shall be made under the exclusive and direct control of the State Highway Department.

In enacting Art. 6674d (22 Laws of Texas, ch. 186, page 456 of Regular Session) the 39th Legislature stated in the emergency clause: "The fact that the present laws of this State do not meet the requirements of the Federal Aid Act for a participation in the funds available for carrying out said Act creates an emergency * * *." In the preliminary language enacting Art. 6674q–4 (28 Laws of Texas, ch. 13, page 15 of Third Called Session) the 42nd Legislature stated generally that since the ownership and control of all State Highways were vested in the State, with construction and maintenance thereof the functions of the State, and since the counties and defined road districts had aided the State in the development, construction and maintenance of the highways, furnishing and contributing money for the purpose through issuance of bonds, etc. and otherwise lending their credit, all for the benefit of the State,—the State desired to reimburse and compensate the counties and defined road districts for the cost incurred by said agencies in thus aiding the State. The legislation was accordingly enacted.

We cannot find in either the Act by the 39th Legislature or in the Act by the 42nd Legislature, or in any amendment of said Acts, where the State was prohibited from

accepting aid in any highway project or improvement other than as applied to counties and their subdivisions, and defined road districts of the State. Even these agencies were not prohibited from supplying rights-of-way on which the State might construct highways. ·

Articles 6674d and 6674q–4 are concerned with highway improvement and construction. Another article, V.A.T.S. Art. 6673, "Control of highways" is somewhat similar in that it concerns maintenance of highways already constructed or improved. By Art. 6673 the State Highway Commission is authorized to take over and maintain the various state highways. It is furthermore obvious that the Legislature, in its enactment of said article, was concerned with the eligibility of the State for Federal aid. In Gabbert v. City of Brownwood, 1943 (Tex. Civ.App., Eastland), 176 S.W.2d 344, 349, error refused, Judge Funderburk stated, "The conclusion seems to us to be inescapable that the effect of Article 6673 was to confer upon the State Highway Department only the former jurisdiction of county commissioners' courts, which, although in terms broad enough to include the former jurisdiction of cities and towns, did not do so, for the very same reason they were not included in the jurisdiction of county commissioners' courts which said article transferred to the Highway Department."

■ Based generally upon the reasoning and rules of statutory construction with which Judge Funderburk concerned himself in the case of Gabbert v. City of Brownwood we have arrived at a similar conclusion relative to Articles 6674d and 6674q–4. We hold that these articles did not operate to deprive the City of Arlington, a Home Rule city, of its jurisdiction to arrange and pay for the improvement of a portion of a state highway within its municipal boundaries and assess abutting property and owners for the cost thereof; that as applied to cities the power granted in the Home Rule amendment, and specifically in Art. 1175 and sec. 16 thereunder " * * *

to provide for the improvement of any public street, alleys, highways, * * *" was not abrogated but merely limited in that the later articles operated to oblige the cities to seek to accomplish any such improvement through the State Highway Department, which, if authorized and permitted by the latter, would be furthermore subject to its control.

■ Additionally, in Art. 6673b, "Contracts with cities, etc., concerning State Highways" is to be found statutory authority for a city, whether a Home Rule city or not, to enter into contracts with the State Highway Commission relative to highway improvements within the municipal boundaries of the city. True, the same article states that the Commission's entry into such a contractual relation shall be at its discretion, but that is not a question in the instant situation for the Commission did contract with the City of Arlington. Under such contract the city was authorized (if there be meaning thereunder), to construct the curb and gutter independently. Obviously it was in the exercise of sound judgment, in the interest of economy, that the city chose to and prevailed upon the State Highway Department to include the city's portion of the work in an enlarged contract between the Department and the general contractor. Under such enlarged contract was satisfied the requirements of Arts. 6674d and 6674q–4 concerning the Departmental responsibility to exercise exclusive and direct control over highway improvements.

Title 23 U.S.C.A., particularly sec. 110, "Project agreements" and sec. 116, "Maintenance", recognizes the authority or propriety of the state highway departments of the several states to have highway improvements (within contemplation of the Title) constructed at the expense of local subdivisions of the states.

The parties pose certain argument in view of V.A.T.S., Art. 6674c–1, "Contributions from counties or political subdivisions for roads therein". We are of the opinion,

and so hold, that this article neither expressly refers to cities nor should be deemed to include cities by any necessary implication.

There was no error on the part of the trial court in sustaining the municipal jurisdiction of the City of Arlington to make the special assessment for the cost of constructing the curb and gutter improvements in question. In view of our holding, the regularity of the procedure under and by way of which the assessments were levied under V.A.T.S., Art. 1105b, "Street improvements and assessments * * *" is not a question on the appeal.

Judgment is affirmed.